## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| DAVITA INC., |
| Plaintiff, |
| v. |
| U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES *et al.*, |
| Defendants. |

Civil Action No. 20-1798 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff DaVita Inc., "a leading provider of life-sustaining dialysis treatment for patients with severe kidney disease," Pl.'s Mem. Supp. Pl.'s Cross-Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 17-1; *see also* Compl. at 2 ¶ 3, ECF No. 1,[1] challenges the response of defendants, the U.S. Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS"), to a request submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records consisting of thirty-six public comments submitted more than thirty years ago, in 1990, regarding a proposed rule that was finalized in 1995 (the "FOIA Request"), Defs.' Mot. Summ. J. ("Defs.' Mot."), Ex. A, Decl. of Hugh Gilmore ("Gilmore Decl."), Ex. 1, FOIA Request at 3, ECF No. 14-3; *see also* Compl. ¶ 7. Specifically, plaintiff alleges in a single claim that defendants have not fulfilled their obligation under FOIA to "release records sought through" the FOIA Request, Compl. at 5 ¶ 2; *see also id.* at 5 ¶¶ 1–4, because they conducted an inadequate search for responsive records, *see* Pl.'s Opp'n at 1–2.

---

[1] The numbering of paragraphs in plaintiff's Complaint restarts from 1 at page 5. *See* Compl. at 5. To avoid confusion, citations are to the page and paragraph number when referring to duplicated paragraph numbers in the Complaint.

Pending before the Court are the parties' cross-motions for summary judgment. Defs.'
Mot., ECF No. 14; Pl.'s Cross-Mot. Summ. J. ("Pl.'s Mot."), ECF No. 17. For the reasons set
forth below, both parties' motions are denied.

## I.   BACKGROUND

Plaintiff's FOIA Request is briefly described below, followed by review of defendants'
responses to the Request both before and after initiation of this lawsuit.

### A.   The FOIA Request

In March 1990, HHS's Health Care Financing Administration, a predecessor subagency
to CMS, sought comments on a Notice of Proposed Rulemaking setting forth a proposed rule to
implement provisions of the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b),
entitled *Medicare Program; Medicare Secondary Payer for Disabled Active Individuals* (the
"Proposed Rule"), 55 Fed. Reg. 8,491 (Mar. 8, 1990). This rulemaking process resulted in a
final rule, promulgated in 1995, entitled *Medicare Program; Medicare Secondary Payer for
Individuals Entitled to Medicare and Also Covered Under Group Health Plans* (the "Final
Rule"). 60 Fed. Reg. 45,344 (Aug. 31, 1995) (codified at 42 C.F.R. §§ 400, 411). The Final
Rule specified that the agency had "received 36 timely letters of comment from employers,
insurance companies, law firms, actuarial firms, individuals, associations (two business and one
medical), and beneficiary rights organizations" in response to its Proposed Rule. *Id.* at 45,349.

Plaintiff is currently litigating the meaning and application of the MSP Act and its
implementing regulations in several lawsuits. Pl.'s Statement of Undisputed Material Facts
("Pl.'s SMF") ¶ 4, ECF No. 17-2; *see also, e.g.*, *DaVita Inc. v. Amy's Kitchen, Inc.*, 981 F.3d
664, 670–71 (9th Cir. 2020), *pet. for reh'g filed*, Pet. Panel Reh'g or Reh'g En Banc, No. 19-
15963 (9th Cir. Jan. 7, 2021), ECF No. 78; *DaVita Inc. v. Marietta Mem'l Hosp. Emp. Health
Benefit Plan*, 978 F.3d 326, 353 (6th Cir. 2020); Mot. to Stay Mandate Pending Filing of Pet. for

Writ of Cert., *Marietta Mem'l Hosp. Emp. Health Benefit Plan*, No. 19-4039 (6th Cir. Dec. 30, 2020), ECF No. 81.  As part of the preparation for that litigation, on November 22, 2019, plaintiff submitted a FOIA request to CMS, seeking "access to the comments that were submitted on the Proposed Rule," in particular, "copies of all 36 comments" referenced in the Final Rule, "in PDF format if possible."  FOIA Request at 3.  Plaintiff also "ask[ed]" that the FOIA Request "receive expedited processing because the comments may be materially relevant to the outcome of an ongoing federal court case."  *Id.*

### B.   Processing of the FOIA Request and Procedural History

CMS acknowledged receipt of the FOIA Request on November 22, 2019.  Gilmore Decl. ¶ 3, ECF No. 14-2; Defs.' Statement of Material Facts as to Which There Is No Genuine Issue ("Defs.' SMF") ¶¶ 3, 5, ECF No. 14-1; Pl.'s Resp. Defs.' Statement of Material Facts as to Which There Is No Genuine Dispute ("Pl.'s Resp. SMF") ¶¶ 3, 5, ECF No. 17-2.  On December 4, 2019, CMS denied plaintiff's request for expedited processing and advised that the FOIA Request would therefore be processed "in accordance with th[e] agency's 'first in, first out' practice."  Gilmore Decl., Ex. 2, Letter from Jay Olin, Director, Division of FOIA Analysis-C, FOIA Group, CMS, to Andrew Tutt, Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") (Dec. 4, 2019) at 1, ECF No. 14-3; *see also* Pl.'s SMF ¶ 12; Defs.' Reply Pl.'s Statement of Undisputed Material Facts ("Defs.' Resp. SMF") ¶ 12, ECF No. 19-2; Defs.' SMF ¶ 6; Pl.'s Resp. SMF ¶ 6.  Plaintiff has not appealed the denial of its expedition request, *see* Gilmore Decl. ¶ 8; Defs.' SMF ¶ 9, and does not challenge the timeliness of defendants' response to the FOIA Request in this litigation.

### 1.   *Initial Search for Comments*

CMS then began its search for responsive records.  According to the Director of the FOIA Group for CMS's Office of Strategic Operations and Regulatory Affairs ("OSORA"), who

is also CMS's FOIA Officer, Gilmore Decl. ¶ 1, after plaintiff's expedition request was denied,

the FOIA Request "was assigned to the complex track" for further action because of the

possibility that it would require "searches . . . of multiple offices and possibly warehouses based

on the age of the records" requested, *id.* ¶ 13.  Following the "first in, first out" processing

procedures of this track, the FOIA Group assigned the FOIA Request to OSORA based on the

regulatory nature of the records sought by plaintiff.  *Id.* ¶ 14.  On March 20, 2020, OSORA

"advised" the FOIA Group that records from a rulemaking that began in 1990, such as those

requested by plaintiff, "would likely be dispositioned to the National Archives and Records

Administration ('NARA')" for storage and eventual archiving because of their age and

recommended that plaintiff "be directed there."  *Id.* ¶ 15.  To investigate whether the records had

been transferred to NARA, "OSORA transferred the FOIA Request to the Regulations

Development Group ('RDG')," *id.* ¶ 16, which is the office "responsible for CMS'[s] process for

vetting, developing, and publishing regulations and liais[ing] with the Office of Management and

Budget for regulation publication in the national *Federal Register*," *id.* ¶ 24.

  In April 2020, approximately four months after submission of the FOIA Request, plaintiff

requested that CMS "furnish the requested records as soon as possible," Gilmore Decl., Ex. 3,

Letter from John P. Elwood, Arnold & Porter, to Jay Olin, Director, Division of FOIA Analysis-

C, FOIA Group, CMS (Apr. 3, 2020) at 1, ECF No. 14-3; *see also id.* ¶ 6, and that the agency

describe its "plans for addressing" the FOIA Request, *id.*, Ex. 4, Email from Sam Callahan,

Arnold & Porter, to Hugh P. Gilmore & Joseph Tripline, OSORA, CMS (Apr. 13, 2020, 3:28

PM) at 1, ECF No. 14-3; *see also id.* ¶ 7; Defs.' SMF ¶¶ 7–8; Pl.'s Resp. SMF ¶¶ 7–8.  Three

months later, on July 2, 2020, having received no response from defendants, Defs.' SMF ¶ 9;

Pl.'s Resp. SMF ¶ 9, plaintiff initiated this litigation, *see* Compl.; Defs.' SMF ¶ 10; Pl.'s Resp. SMF ¶ 10.

### 2.    *Use of Archives Records Center Information System ("ARCIS")*

In the meantime, CMS continued its search for records responsive to the FOIA Request, which was now assigned to RDG.  RDG uses a tracking system called Regulations Records Management ("RRM") to locate records related to past rulemakings and other agency proceedings.  Gilmore Decl. ¶ 16.  This system allows RDG to locate any transfer number or other information about records storage that is associated with a particular set of records.  The existence of an associated transfer number indicates that the records have begun the process of transitioning from CMS to NARA custody.  *See id.* ¶¶ 15–16, 25.  At the first step of this process, records remain in the agency's custody but are kept in temporary storage at a Federal Records Center ("FRC") operated by NARA.  At the second step, triggered by the close of a retention period determined by the agency's relevant records retention policies, the records are permanently dispositioned from the FRC to NARA.  *See id.* ¶¶ 16, 19, 25.  "CMS can request records when they are still at the FRC, but once the records get accessioned by NARA, CMS no longer has physical or legal custody of them."  *Id.* ¶ 19.  When RDG's search of RRM produces a transfer number or other information relevant to locating a particular set of records, RDG "provides that information" to CMS's Division of Records Information Systems ("DRIS"), *id.* ¶ 16; *see also id.* ¶ 26, the office "responsible for CMS records management standards and develop[ing] policies and procedures to ensure the availability of CMS records and programs," *id.* ¶ 17.  DRIS may be able to use the information generated by RRM "to track the records['] location."  *Id.*

RDG transferred the FOIA Request to DRIS, apparently without conducting an initial RRM search, "because the age of the records indicated that records management retention rules

may have been applied to" them, meaning that they had likely begun, or even completed, the

process of transitioning from CMS to NARA custody and that DRIS was consequently best

positioned to track their location.  *Id.*  DRIS, like OSORA, informed the FOIA Officer that the

thirty-year-old records "may have been transferred out of CMS'[s] custody to NARA."  *Id.* ¶ 18.

To determine whether the records remained in agency custody or had been accessioned to

NARA, DRIS "assigned the [FOIA Request] to a records analyst and initiated a search of the

Archives Records Center Information System ('ARCIS')," *id.* ¶ 18, a database that "tracks

records transfers at the [FRC] based on the disposition authorities," and can be searched by RRM

transfer number or regulation tracking number, *id.* ¶ 19.  This database "tells CMS when records

meet . . . retention requirements and must be transferred [from the FRC where they are

temporarily stored] to NARA for permanent recordkeeping" and provides precise location

information for records in temporary storage by warehouse and box number.  *Id.*; *see also id.*

¶¶ 20, 28.

     To facilitate DRIS's search of ARCIS, the FOIA Group provided DRIS with the Federal

Register citation for the Proposed Rule.  *Id.* ¶ 20.  DRIS, using this citation, "inadvertently

determined" that the relevant regulation tracking number was "BPD-485-P."  *Id.*  A search of

ARCIS indicated that records associated with this tracking number "were accessioned to NARA

on January 1, 2018" and, as a result, "are in NARA's legal and physical custody," not CMS's.

*Id.*  By this time, the instant litigation was underway and the parties were in the process of

conferring in the hopes of reaching a negotiated solution.  *See* Pl.'s SMF ¶¶ 17–22; Defs.' Resp.

SMF ¶¶ 17–22.  On August 13, 2020, defendants, relying on DRIS's inaccurate search of

ARCIS, informed plaintiff that they did not have legal or physical custody over the requested

records and therefore planned to issue a "no records response."  Pl.'s Mot., Ex. 1, Email from

Paul A. Mussenden, Asst. U.S. Att'y ("AUSA"), U.S. Att'y's Off. for D.C. ("USAO"), to Sam Callahan, Arnold & Porter (Aug. 13, 2020, 9:57 AM) at 1, ECF No. 17-3; *see also* Pl.'s SMF ¶ 20; Defs.' Resp. SMF ¶ 20.  That same day, plaintiff informed the agencies that the regulation tracking number "BPD-485-P" was incorrect, and provided the correct tracking numbers of "BPD-482-P" for the Proposed Rule and "BPD-482-FC" for the Final Rule.  Pl.'s Mot., Ex. 2, Email from Sam Callahan, Arnold & Porter, to Paul Mussenden, AUSA, USAO (Aug. 13, 2020, 12:44 PM) at 1, ECF No. 17-4; *see also* Gilmore Decl. ¶ 22; Pl.'s SMF ¶¶ 21–22; Defs.' Resp. SMF ¶¶ 21–22.

### 3.   *Use of Regulations Records Management ("RRM") Tracking System*

The FOIA Group provided the correct tracking numbers for the Proposed Rule and the Final Rule to DRIS, Gilmore Decl. ¶ 23, which in turn contacted records management custodians in RDG to verify "the records transfer number" associated with the Proposed Rule and "to ensure no other records remained in RDG about" the Proposed Rule, *id.* ¶ 24.  RDG searched the RRM system using the correct tracking number for the Proposed Rule, BPD-482-P, as a search term. This search associated the tracking number with the transfer number 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 and the records box number 14 ("Box 14").  *Id.* ¶ 26.  "RDG provided the transfer number and box number to DRIS," which in turn "used this information to search ARCIS for the records transfer."  *Id.* ¶ 27.  ARCIS indicated that Box 14 was in temporary storage at the Washington National Records Center ("WNRC") and had not yet been accessioned to NARA.  *Id.* ¶ 28. Accordingly, on August 17, 2020, CMS requested Box 14 from the WNRC, *id.* ¶ 29, as reflected in the parties' first joint status report to the Court, *see* Joint Status Report (Aug. 21, 2020) ¶ 3, ECF No. 9.

### 4.    *Review of Box 14*

On September 10, 2020, CMS received from the WNRC the box, Gilmore Decl. ¶ 29, containing "about thirteen linear inches of paper," *id.* ¶ 30.  CMS's FOIA Officer "manually reviewed each piece of paper in the box and determined that none of the papers in the box consisted of public comments."  *Id.* ¶ 31; *see also* Suppl. Decl. of Hugh Gilmore ("Suppl. Gilmore Decl.") ¶ 3, ECF No. 19-1.  All thirteen inches of paper consisted of "draft copies of the proposed rule with internal agency redline edits and comments on them."  Gilmore Decl. ¶ 31. Upon realizing that Box 14 did not contain the records sought by plaintiff, the FOIA Group "reached out to" RDG "to determine if . . . any other warehouse boxes [were] associated" with the tracking number for the Proposed Rule, BPD-482-P, or if any box was associated with the tracking number for the Final Rule, BPD-482-FC.  Suppl. Gilmore Decl. ¶ 4.  RDG again searched the RRM using the tracking numbers for both the Proposed Rule and the Final Rule as search terms, *id.* ¶ 5, and "no other boxes" associated with either rule were located, *id.* ¶ 6.  Nor did RDG locate a different transfer number associated with either the Proposed Rule or the Final Rule to provide to DRIS for a new search of ARCIS.  *See id.*

### 5.    *Search of Program Components*

Since this second search of the RRM database did not lead to any new locations where responsive records might be found, RDG "suggested" that the FOIA Group "search the originating program offices for" the Proposed and Final Rules "to determine if records were retained by those offices."  *Id.* ¶ 7.  In particular, RDG recommended a search of the Centers for Medicare Office Fee For Service ("CMFFS"), the Centers for Medicare Drug Plan and C&D Data Group ("CMMDPG"), and the Centers for Medicare Chip Services ("CMCS"), each of which "has involvement in Medicare billing" and therefore might have been involved in the development of regulations implementing the MSP Act.  *Id.* ¶ 8.  Although, based on CMS's

records retention policies, "it was unlikely that the originating offices would retain copies of the rulemaking record, as permanent records that old have typically already been sent to [the WNRC] for storage," CMFFS, CMMDPG, and CMCS were asked to search for responsive records. *Id.* ¶ 7. On October 19, 2020, the FOIA Officer "sent [them] a search request and a copy of the FOIA [R]equest." *Id.* ¶ 8. CMFFS reported that it "could not find anything related to" the Proposed Rule or the Final Rule; CMMDPG "replied that their mission was not the subject of the request," indicating that their office was not involved in developing the regulation and therefore had no records; and CMCS "had no records that old in their possession." *Id.* ¶ 9.

CMS acknowledges that "[b]ased on current protocol for packaging records, comments submitted on a rulemaking would be a standard part of [the] record," but notes that, "[g]iven the passage of time" since the Proposed Rule was issued in 1990, "there is no one currently available to speak to what the procedures were and how the records were packaged" when records related to the Proposed Rule were transferred to the FRC. Gilmore Decl. ¶ 32. The agencies therefore represent that "[a]ll offices and files likely to contain responsive materials have been consulted and searched." Suppl. Gilmore Decl. ¶ 11.

### 6. *Defendants' "No Records Response" and Parties' Conferral*

Based on the results of its efforts, on November 2, 2020, CMS provided a "final no records response" to plaintiff, Gilmore Decl. ¶ 33, stating that "CMS was unable to locate any records, i.e. 36 comment letters, to 55 F.R. 8491 (Mar. 8, 1990) proposed rule responsive to your request," *id.*, Ex. 5, Letter from Hugh Gilmore, Director, FOIA Group, CMS, to Andrew Tutt, Arnold & Porter (Nov. 2, 2020) at 2, ECF No. 14-3; *see also* Defs.' SMF ¶ 35; Pl.'s Resp. SMF ¶ 35; Pl.'s SMF ¶ 29; Defs.' Resp. SMF ¶ 29. The parties conferred after plaintiff received this letter, in a final attempt to reach a negotiated solution. Pl.'s SMF ¶ 30; Defs.' Resp. SMF ¶ 30. As part of this process, plaintiff asked that the agencies produce copies of or otherwise allow

access to the contents of Box 14, Pl.'s Mot., Ex. 3, Email from Paul A. Mussenden, AUSA, USAO, to Sam Callahan, Arnold & Porter (Nov. 19, 2020, 3:54 PM) ("Nov. 19 Email") at 4, ECF No. 17-5; Pl.'s SMF ¶ 31; Defs.' Resp. SMF ¶ 31, and informed the Court that defendants' response to this request "would assist in determining whether a negotiated resolution is feasible," Joint Status Report (Nov. 4, 2020) ¶ 7, ECF No. 11.  On November 19, 2020, defendants denied the request on the grounds that the FOIA Request sought only the thirty-six comments to the Proposed Rule.  Nov. 19 Email at 1.  In the agencies' view, "drafts of the rule itself" therefore "were not ultimately responsive" to the FOIA Request, and defendants had no obligation under FOIA to produce them.  *Id.*; *see also* Pl.'s SMF ¶ 32; Defs.' Resp. SMF ¶ 32.  Accordingly, the parties advised the Court that they had reached deadlock, Joint Status Report (Nov. 25, 2020) ¶¶ 8, 12–13, ECF No. 12, and a schedule for dispositive motions was set, *see* Min. Order (Nov. 30, 2020).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "'[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law.'"  *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see also* Fed. R. Civ. P. 56(a).  "'In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled

to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" (omission in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))).  Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *DiBacco v. U.S. Army* ("*DiBacco I*"), 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).  Agencies are therefore statutorily mandated to "make . . records promptly available to any person" who submits a request that "reasonably describes such records" and "is made in accordance with [the agency's] published rules."  5 U.S.C. § 552(a)(3)(A).  Should an agency fail to comply with these obligations, FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *Id.* § 552(a)(4)(B).

An agency responding to a FOIA request is "simply required to 'conduct[] a search reasonably calculated to uncover all relevant documents.'"  *In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020) (alteration in original) (emphasis omitted) (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).  Thus, when reviewing a challenge to the adequacy of an agency's search for responsive records, "a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the *search* for [the requested] documents was *adequate*.'"  *Id.* (alteration and emphasis in original) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

In this regard, an agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents" and that it "perform[ed] more than a perfunctory search" to identify responsive records.  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) ("'In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))).  At the summary judgment stage, an agency "can satisfy this burden through a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'"  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2020) (quoting *Oglesby*, 920 F.2d at 68); *see also Reps. Comm. for Freedom of the Press v. FBI* ("*Reps. Comm.*"), 877 F.3d 399, 402 (D.C. Cir. 2017).  Courts "accord such affidavits 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'"  *Machado Amadis*, 971 F.3d at 368 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

If an agency has made a *prima facie* showing of the adequacy of its search, the FOIA requester bears the burden of overcoming this presumption of good faith by "provid[ing] countervailing evidence as to the adequacy of the agency's search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal quotation marks omitted).  "'[S]ummary judgment is inappropriate' if 'a review of the record raises substantial doubt' as to the search's adequacy, 'particularly in view of well defined requests and positive indications of overlooked

materials.'" *Reps. Comm.*, 877 F.3d at 402 (alteration in original) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)); *see also Aguiar*, 865 F.3d at 738.

## III.    DISCUSSION

The parties' cross-motions for summary judgment dispute only the adequacy of defendants' search for responsive records. *See* Defs.' Mot. at 1; Pl.'s Opp'n at 1–2. First, plaintiff asserts that defendants' search was unreasonable and inadequate because the agencies did not locate or produce in response to the FOIA Request the thirty-six public comments sought by plaintiff. Pl.'s Opp'n at 6–14; Pl.'s Reply Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s Reply") at 3–8, ECF No. 21. According to plaintiff, defendants' "failure to find a 'well-defined' set of comments known to have been submitted during the rulemaking" itself renders the agencies' search inadequate. Pl.'s Opp'n at 10; *see also* Pl.'s Reply at 3–5. In addition, plaintiff contends that it "is entitled to the draft rules" that were found in Box 14, "as the record suggests that those drafts may well be responsive" to the FOIA Request. Pl.'s Opp'n at 2; *see also id.* at 14–15; Pl.'s Reply at 8–9. The adequacy of defendants' search for the thirty-six public comments is addressed before consideration of whether the drafts located in Box 14 are within the scope of plaintiff's FOIA Request.

### A.    Adequacy of Defendants' Search for 36 Public Comments

Plaintiff first contends that defendants' conceded failure to locate the thirty-six comments that are the subject of the FOIA Request indicates that their search was inadequate, both standing alone and because the agencies improperly failed to search locations other than Box 14, including neighboring warehouse boxes in which the comments might inadvertently been placed. Pl.'s Opp'n at 6–14; Pl.'s Reply at 3–8. As set forth below, defendants have carried their burden at summary judgment to explain how they identified repositories where the comments were likely to be found and why no other locations were likely to contain records responsive to the

FOIA Request, and were not required to search surrounding boxes.  They have not, however, described their supplemental searches of RDG, CMFFS, CMMDPG, and CMCS with sufficient detail to determine whether these searches were adequate, and summary judgment must therefore be denied.

### 1.    *Significance of the Agencies' Failure to Find the Comments*

In response to plaintiff's contention that their failure to retrieve the comments indicates that the search was inadequate, the agencies counter that "CMS has . . . searched as extensively as it can using all of the information available to it," Defs.' Mem. P. & A. Supp. Defs.' Mot. Summ. J. ("Defs.' Mem.") at 6, ECF No. 14-4, and that "the one one time existence of these 31 year old records . . . does not render CMS's search inadequate, nor is it sufficient to defeat summary judgment," Defs.' Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ("Defs.' Reply") at 7, ECF No. 19.  In making this argument, defendants rely on the elementary FOIA principles that "[a] search is not inadequate merely because it failed to 'uncover every document extant,'" Defs.' Mem. at 5 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1201), and that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde*, 315 F.3d at 315; *see also* Defs.' Reply at 6–7.

Plaintiff argues that, even within the boundaries of this well-settled FOIA law, "[c]ourts hold FOIA searches inadequate when an agency fails to find known records that are responsive to the plaintiff's request, and then offers insufficient explanation for that failure."  Pl.'s Opp'n at 7.  In so arguing, plaintiff appears to allude to an exception to the general rule that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate," which exception arises "[i]n certain circumstances" deemed "sufficient to overcome an adequate agency affidavit."  *Iturralde*, 315 F.3d at 315.  "Among those circumstances is a

case in which a FOIA requester points to 'evidence that would indicate that at the time the [agency] searched its files there was reason to believe that [the missing documents were] in those files.'" *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, Civ. A. No. 17-1208 (BAH), 2021 WL 918204, at *7 (D.D.C. Mar. 9, 2021) (alterations in original) (quoting *Iturralde*, 315 F.3d at 315). "In such cases, '[t]he agency's failure to locate a document that the evidence indicates likely existed at the time of the search . . . may give rise to material doubt about the adequacy of the agency's affidavits.'" *Id.* (alteration and omission in original) (quoting *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 36 (D.D.C. 2017)).

As evidence that the thirty-six comments existed at the time of the Final Rule's promulgation in 1995, plaintiff points to the Final Rule's explicit reference to and brief description of them. *See* 60 Fed. Reg. at 45,349; Pl.'s Opp'n at 8–9; Pl.'s Reply at 3–5. To demonstrate that the comments likely existed at the time of defendants' search last year, plaintiff notes that defendants are required, under the Federal Records Act, 44 U.S.C. §§ 3101–3107, and its implementing regulations to "make and preserve records," *id.* § 3101, "[d]ocument[ing] the formulation and execution of basic policies and decisions," 36 C.F.R. § 1222.22(e), and to establish records schedules, subject to NARA approval, governing the maintenance and preservation of records, *see id.* § 1220.34(g); 44 U.S.C. § 3102; Pl.'s Opp'n at 9; Pl.'s Reply at 3–4. The records schedule approved by NARA with respect to CMS's predecessor subagency required permanent retention of an "official Rulemaking record file," including "all public comments received in response to the proposed rule,"[2] while CMS's current records schedule requires "[p]ermanent" retention of "[a]ny records documenting the policy of CMS, including

---

[2]    Health Care Financing Admin., Request for Records Disposition Authority, No. N1-440-95-1, at 2 (Oct. 28, 1998), https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-health-and-human-services/rg-0440/n1-440-95-001_sf115.pdf.

policy and regulations [and] substantial cases related to rulemaking records."[3]  Giving

defendants the presumption of regularity, "that agency employees comply with applicable law"

when carrying out agency business, *Ctr. for Biological Diversity*, 2021 WL 918204, at *8 (citing

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *Bracy v. Gramley*, 520

U.S. 899, 909 (1997); *Stone v. Stone*, 136 F.2d 761, 763 (D.C. Cir. 1943)), plaintiff has

demonstrated that the thirty-six comments should have existed somewhere in the agency's

records at the time of the search.  Defendants do not challenge this conclusion.  *See* Defs.' Reply

at 7; Gilmore Decl. ¶ 32.

   Even when an agency's failure to locate known records casts doubt on its affidavits,

however, as plaintiff appears to acknowledge, *see* Pl.'s Opp'n at 10, 13; Pl.'s Reply at 7, review

still "centers on the adequacy of the agency's efforts to locate the missing records rather than the

success of those efforts," *Ctr. for Biological Diversity*, 2021 WL 918204, at *10; *see also*

*Aguiar*, 865 F.3d at 739; *Iturralde*, 315 F.3d at 315.  When a plaintiff identifies documents not

found by the agency, the agency must "explain those holes in the record," *Ctr. for Biological*

*Diversity*, 2021 WL 918204, at *8, such that the Court is "able to ascertain if [the agency] has

explained the . . . absence" of the responsive records from the results of the search, *Morley v.*

*CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (emphasis omitted); *see also Forest Cnty.*

*Potawatomi Cmty. v. Zinke*, 278 F. Supp. 3d 181, 194–95 (D.D.C. 2017).  This requirement is

not, however, an insurmountable burden for the agency.  "After all, particular documents may

have been accidentally lost or destroyed, or a reasonable and thorough search may have missed

them." *Iturralde*, 315 F.3d at 315.  Human error of this kind does not defeat the agency's claim

---

[3]   Ctrs. for Medicare & Medicaid Servs., Request for Records Disposition Authority, No. DAA-0440-2015-0001 (Nov. 22, 2016) at 6, https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-health-and-human-services/rg-0440/daa-0440-2015-0001_sf115.pdf.

for summary judgment, so long as the agency has fulfilled its obligation to carry out an adequate search.

Thus, an agency that fails to find an identified record or set of records through an otherwise-adequate search bears the burden of explaining not the absence of the particular documents from the agency's records, but simply "why the record system[s] that it queried . . . w[ere] the only one[s] likely to contain" the requested records and "why it was unlikely that there were additional files" or locations "that could contain" the requested records. *Aguiar*, 865 F.3d at 739–40; *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27–28 (D.C. Cir. 1998); *Oglesby*, 920 F.2d at 68 (An agency is "required to explain in its affidavit that no other record system was likely to produce responsive documents."). In other words, the question is not whether the agency can pinpoint the exact whereabouts of the missing documents, but whether the agency can show that its search is adequate despite its failure to retrieve known records.

### 2. *Defendants Have Sufficiently Explained Their Determination of Where to Search and Are Not Required to Search Surrounding Boxes*

Against this standard, plaintiff contends that "the agencies have offered no substantive explanation for why they refused to expand their search beyond a single box," Pl.'s Reply at 7, and therefore have not carried their burden at summary judgment to show that they "searched 'all files likely to contain responsive materials,'" Pl.'s Opp'n at 12 (quoting *Am. Oversight v. GSA*, 311 F. Supp. 3d 327, 338 (D.D.C. 2018)); *see also* Pl.'s Reply at 2, 4–5; Pl.'s Opp'n at 10–14, 11 (arguing that the database searches that led the agencies to Box 14 are not "the only viable way to search for rulemaking records" (emphasis omitted)). As a factual matter, this characterization of defendants' efforts overlooks several additional steps taken in the course of the search, steps that plaintiff does not address or acknowledge at all. Though the agencies focused their attention on the contents of Box 14, they also searched the records databases for other warehouse boxes

that might contain potentially responsive records, Suppl. Gilmore Decl. ¶¶ 4–6, and carried out searches of RDG, Gilmore Decl. ¶ 24, and the CMS program offices CMFFS, CMMDPG, and CMCS, Suppl. Gilmore Decl. ¶¶ 7–9, as the agency components most likely to have been involved in the development of the Proposed and Final Rules.

Defendants represent that, "[b]ecause of the age of the rulemaking records, they likely would have been sent to the . . . warehouse for [temporary] storage," and because of the subject matter of the Proposed Rule, "input on the agency response to the comment letters would most likely [have] come from" CMFFS, CMMDPG, and CMCS, while RDG might have had responsive records in its custody at some point as a result of its role as the overseer of CMS's regulatory processes. *Id.* ¶ 10.  As a result, they argue, CMS's records databases and the single warehouse box to which they directed the FOIA Group and the program offices searched by defendants are the only offices and locations likely to contain responsive records. *Id.*  They further note that, "[g]iven the passage of time," nobody with personal knowledge of either the processing of these records or the then-controlling records retention procedures "is . . . currently available" for consultation.  Gilmore Decl. ¶ 32.  This explanation of why the agencies' search was limited to Box 14, RDG, CMFFS, CMMDPG, and CMCS, paired with the additional details offered by CMS's FOIA Officer as to how Box 14 and the program offices were identified, described below, is sufficient to carry the agency's burden.

As to Box 14, CMS's FOIA Officer declares that the FOIA Group sent the FOIA Request first to OSORA and then, in light of the age of the requested records, to RDG and DRIS, components charged with overseeing CMS's regulatory process and records maintenance. Gilmore Decl. ¶¶ 14–18, 24.  Upon determining that the age of the records made it likely that they were stored off-site, whether in agency or NARA custody, RDG and DRIS searched the

appropriate records databases, using the regulation tracking number and transfer number of the Proposed Rule, to identify the precise location of the records in Box 14 at the WNRC, *id.* ¶¶ 16–19, 22–28, and retrieved that box from storage, *id.* ¶ 29.  After a manual search of Box 14 revealed that the thirty-six comments were not inside, *id.* ¶ 32; Suppl. Gilmore Decl. ¶ 3, the FOIA Group took additional steps to evaluate whether any other warehouse boxes were likely to contain responsive records.  RDG initiated new searches of its databases to confirm that no other boxes were associated with the Proposed Rule, and expanded its search of those platforms using the regulation tracking number for the Final Rule as a search term.  Suppl. Gilmore Decl. ¶¶ 4–6.[4]  RDG's database searches did not identify an additional transfer number that could be searched.  *Id.* ¶ 6.  As a result of these efforts, even though the FOIA Group only searched the contents of a single warehouse box, the agencies have proffered a reasonable explanation for their conclusion that Box 14 was the only warehouse storage location that was likely to contain responsive records.

Plaintiff argues that, even though the agencies' records databases have consistently identified Box 14 as the only warehouse box containing records related to the Proposed Rule or the Final Rule, the agencies should be required "to identify other locations where the records might have been packaged, either intentionally or accidentally," for example, "neighboring boxes or boxes with identifying numbers that could represent transposed digits to the records here." Pl.'s Opp'n at 11; *see also* Pl.'s Reply at 5.  Plaintiff claims that this additional search of neighboring boxes, for which it proposes no limiting principle, is "appropriate here because the agency originally mistakenly used the wrong tracking number to undertake the search," Pl.'s

---

[4]     Plaintiff initially claimed, prior to the submission of the Supplemental Declaration of Hugh Gilmore, that "[t]he agencies d[id] not describe having searched for the records using the tracking number associated with the final rule."  Pl.'s Opp'n at 11 (emphasis omitted).  The record has since been supplemented to indicate that defendants did take this step.  *See* Suppl. Gilmore Decl. ¶¶ 4–6.

Opp'n at 11, but offers no explanation of how this immediately corrected error, made in 2020, provides any basis to believe that a similar error warranting extensive new searches of records in storage was made when records related to the Proposed Rule were packaged decades ago.  Nor does plaintiff proffer any evidence, beyond speculation, in support of its belief that the comments might turn up in neighboring boxes.  *See Iturralde*, 315 F.3d at 316 ("[M]ere speculation . . . does not undermine the finding that the agency conducted a reasonable search for [as yet uncovered documents]." (internal quotation marks omitted)).

In order to fulfill its obligations under FOIA, "an agency need not move heaven and earth to locate and produce requested records, and this is so even when the sought-after documents are known to exist and to have once been in the agency's possession."  *Gawker Media, LLC v. U.S. Dep't of State*, 266 F. Supp. 3d 152, 158 (D.D.C. 2017) (citing *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015); *Iturralde*, 315 F.3d at 315).  "[A]dequacy—not perfection—is the standard that FOIA sets."  *DiBacco I*, 795 F.3d at 191.  Defendants have met that standard with respect to their search of records in storage by using the appropriate records databases to identify Box 14 and to confirm that no other boxes are associated with the Proposed Rule or the Final Rule and then searching every page within that box.[5]  They are not obligated to undertake an untold number of searches of additional warehouse boxes, nor are they obligated, as

---

[5]    Plaintiff also challenges the agencies' representation that no public comments were found in Box 14, arguing that "[t]he agencies . . . make no effort to dispel the inherent implausibility that the hundreds of pages of documents they *did* review contained no public comments and consisted entirely of draft copies" of the seven-page Proposed Rule.  Pl.'s Reply at 7.  CMS's FOIA Officer twice avers that he manually reviewed each and every page in Box 14, and determined that none of the hundreds of pages of documents consisted of public comments.  Gilmore Decl. ¶ 31; Suppl. Gilmore Decl. ¶ 3.  Plaintiff offers no reason, beyond its belief that this result is implausible, to doubt the veracity of these declarations, which were made "under penalty of perjury," Gilmore Decl. at 6; Suppl. Gilmore Decl. at 3, and are owed a presumption of good faith that plaintiff can rebut through "countervailing evidence," but not through speculation or skepticism alone, *Iturralde*, 315 F.3d at 314 (internal quotation marks omitted).  Plaintiff appears to suggest that the archiving of "many hundreds of pages of drafts for such a short rule" casts doubt on the agencies' representation that no public comments were kept and sent for preservation.  Pl.'s Reply at 7.  In the absence of any indication of bad faith or evidence on the record to undermine the FOIA Officer's sworn declarations, however, the voluminous record that was located in fact indicates that the agencies took their obligation to preserve records related to the Proposed Rule quite seriously, and supports the theory that the comments' absence from Box 14 is likely the result of human error, not agency malfeasance.

plaintiff suggests, "to explain why such a step would not be feasible," Pl.'s Reply at 3, in the absence of any concrete evidence that other warehouse boxes are likely to hold the comments.

As to the selection of RDG, CMFFS, CMMDPG, and CMCS as the proper offices to carry out supplemental searches, CMS's FOIA Officer explains that the FOIA Group's choice of these four components as the likely holders of responsive records rested on the responsibilities and subject-matter expertise of each group. RDG is responsible for overseeing CMS's rulemaking process and facilitating publication of CMS regulations in the *Federal Register*, Gilmore Decl. ¶ 24, making the conclusion that this office might have had access to records about a rulemaking, even many decades ago, reasonable. CMFFS, CMMDPG, and CMCS are the CMS components with "involvement in Medicare billing." Suppl. Gilmore Decl. ¶ 8. As the Proposed Rule concerned "the rules that limit Medicare payment for services furnished to disabled 'active individuals' who are covered under a large group health plan," 55 Fed. Reg. at 8,492, and therefore potentially touched on the missions of CMFFS, CMMDPG, and CMCS, the FOIA Group made the reasonable determination, acting in accord with RDG's recommendation, that these three program offices were the most likely to have records related to the Proposed Rule, Suppl. Gilmore Decl. ¶¶ 7–8, while program offices with unrelated missions were unlikely to hold related documents.

Plaintiff relies on *Aguiar v. DEA*, 865 F.3d 730 (D.C. Cir. 2017), and *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999), to argue that these explanations are insufficient. *See* Pl.'s Opp'n at 7, 12; Pl.'s Reply at 5–6. The D.C. Circuit in *Aguiar* found inadequate an agency's search that failed to locate "four specific administrative subpoenas," known to have existed at the time of the search. 865 F.3d at 733. The agency had searched two related case files that it located by searching the agency's records database, and "explain[ed]

21

how the agency found the two case files," but "d[id] not explain why the only reasonable place to look for the subpoenas was in case files maintained in" the database. *Id.* at 739. Here, in contrast, defendants have explained that records as old as those sought by plaintiff are typically stored off-site, at an FRC, or have been accessioned to NARA, and that CMS tracks the location of records that have started the process of transitioning from CMS to NARA custody through the RRM and ARCIS databases used in this search. *See* Gilmore Decl. ¶¶ 15–19, 25. Further, unlike the agency in *Aguiar*, upon realizing that the box identified through its database searches did not contain the requested records, defendants initiated searches of the program offices likely to have been involved in the rulemaking, Suppl. Gilmore Decl. ¶¶ 7–9, and, as set forth above, have explained with "reasonable detail," *Aguiar*, 865 F.3d at 739 (internal quotation marks omitted), why no other records systems beyond the databases, the physical files to which they led, and the program offices are likely to contain responsive records.[6]

---

[6]   Citing to several cases, plaintiff contends that "[t]he D.C. Circuit has repeatedly applied these principles [articulated in *Aguiar*] to deny summary judgment to the government under circumstances comparable to those here." Pl.'s Opp'n at 7; *see also* Pl.'s Reply at 5–6. Most of the cases cited by plaintiff in support of this proposition turned on the inadequacy of the agencies' descriptions of their searches, either overall or with respect to aspects of the declarations other than their explanation of the specific repositories searched (or not searched) by the agencies. For example, the Circuit in *Oglesby v. U.S. Department of Army*, 79 F.3d 1172 (D.C. Cir. 1996), determined, as plaintiff quotes, that the district court "could not properly conclude that the original search (which failed to locate any of these possibly numerous and important documents)" was adequate, *id.* at 1185; *see* Pl.'s Opp'n at 7, but reached this decision because of deficiencies in the agency's vague description of the supplemental search that eventually located additional documents, 79 F.3d at 1185; *see also Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (finding inadequate a search that did not locate three known documents because the agency's affidavit "g[ave] no detail as to the scope of the [search] and thus [was] insufficient as a matter of law to establish its completeness"); *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979) (rejecting an agency's "ill-elucidated assertions of thoroughness" in describing generally its unsuccessful search for responsive records). These cases therefore are not "comparable" to the instant case insofar as they do not present the issue disputed by plaintiff, of an agency's alleged failure to search all locations likely to produce responsive records. *Campbell v. U.S. Department of Justice*, 164 F.3d 20 (D.C. Cir. 1998), the only case cited by plaintiff in which the Circuit explicitly addressed the agency's failure to search additional records systems, determined that an agency's search that failed to retrieve known records was inadequate because, although the agency searched its main records system for responsive records, it did not search an additional electronic records database, nor did it search for physical files, *id.* at 27–28. Defendants here have taken those essential next steps, and, aside from its speculation that the comments might be found in neighboring warehouse boxes, plaintiff does not point to any overlooked repositories.

Plaintiff's reliance on *Valencia-Lucena* is likewise misplaced.  That case concerned a search in which the Coast Guard advised a FOIA requester that responsive records might be located at a particular FRC, but "declined to search" that location itself.  180 F.3d at 327.  In rejecting the search as inadequate, the Circuit held that "if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden."  *Id.*  Here, aside from its speculative belief that the comments may have been placed in a neighboring box, plaintiff points to no similarly overlooked locations.

### 3.   *Component Searches Are Inadequately Described*

Defendants' sufficient explanation for their determination of where to search is not enough, however, to carry their burden at summary judgment.  In addition to its requirement that an agency explain why additional repositories are unlikely to contain missing records, the D.C. Circuit has also found that "in some cases, failure to find a record that once existed, coupled with a conclusory affidavit about the methodology of the search, can weaken the agency's claim for summary judgment."  *Aguiar*, 865 F.3d at 739 (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370–71 (D.C. Cir. 1980)).[7]  "[A]n affidavit containing 'no information about the search

---

[7]     Plaintiff cites a string of authorities from this District to assert that an agency's search is inadequate if it fails to properly explain the absence of known records that are not located.  *See* Pl.'s Opp'n at 7–8 (collecting cases); Pl.'s Reply at 5–6 (same).  Those cases in fact support the proposition stated here, that a search in which an agency fails to retrieve known documents may be inadequate not just because of the missing documents but because of the combination of that fact with a particular deficiency in either the search itself or the agency's description of the search.  *See Citizens for Resp. & Ethics in Wash. v. GSA*, Civ. A. No. 18-2071 (CKK), 2019 WL 3414365, at *5 (D.D.C. July 29, 2019) (finding a search that "failed to find at least two [responsive] emails" inadequate because the agency did not properly construe the FOIA request and therefore did not use appropriate search terms); *Am. Oversight*, 311 F. Supp. 3d at 338 (finding inadequate a search that did not produce "calendar entries or logs" because of conflicting representations in the agency's declarations as to whether calendar entries were searched); *Pulliam v. EPA*, 235 F. Supp. 3d 179, 193 (D.D.C. 2017) (holding inadequate an agency declaration that did not explain "why" the agency "chose to limit [its] search to one database" or "how [the agency] utilized . . . search terms"); *Forest Cnty. Potawatomi Cmty.*, 278 F. Supp. 3d at 193–94 (concluding that a search that failed to locate two specific emails was inadequate where the agency claimed, without evidence, to have produced the emails to the plaintiff in response to a previous FOIA request); *Safety Rsch. & Strategies, Inc. v. U.S. Dep't of Transp.*, 903 F. Supp. 2d 1, 9 (D.D.C. 2012) (finding that the "unlikely absence of *any* external communications" between an agency and a third party "support[ed] summary judgment for" the FOIA requester  "when combined with [the agency's] failure to provide the search terms used by . . . potential document custodians"); *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 120–21 (D.D.C. 2005) (similar).

strategies of the [agency] components charged with responding to [a] FOIA request' and

providing no 'indication of what each [component's] search specifically yielded'" is deemed

conclusory and therefore "is inadequate to carry the government's summary-judgment burden."

*Reps. Comm.*, 877 F.3d at 403 (alterations in original) (quoting *Morley*, 508 F.3d at 1122).  Of

particular relevance, under this standard, an affidavit that identifies agency components "tasked

with conducting a search" of certain files but does not explain "how [the components] searched

within those files," *Aguiar*, 865 F.3d at 738, including by identifying the employees chosen to

conduct the search and "disclos[ing] the search terms used by the [agency] and the type of search

performed," is insufficient, *DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015); *see also*

*Morley*, 508 F.3d at 1122.

      Applying those criteria here, defendants' declarations are adequate with respect to their

identification of the likely locations of responsive records and their search of Box 14, their

failure to locate the thirty-six comments notwithstanding.  As described above, the agencies have

provided sufficient information to conclude that they identified all likely repositories of

responsive records.  Box 14 was located by RDG and DRIS through database searches using as

search terms the regulation tracking numbers of the Proposed Rule and the Final Rule and the

only transfer number known to be associated with either rule.  Gilmore Decl. ¶¶ 22–28; Suppl.

Gilmore Decl. ¶¶ 4–6.  These searches were carried out by RDG staff and a DRIS records

analyst.  Gilmore Decl. ¶¶ 18, 24, 26; Suppl. Gilmore Decl. ¶¶ 5–6.  The FOIA Group settled on

CMFFS, CMMDPG, and CMCS as the program offices most likely to have records related to the

Proposed Rule based on the subject matter of their missions, and involved RDG because of its

role in CMS's regulatory process.  Gilmore Decl. ¶ 24; Suppl. Gilmore Decl. ¶¶ 7–10.  The

declarations' descriptions of these processes offer enough detail to conclude that the FOIA

Group's efforts to determine where to search were adequate.  Likewise, the FOIA Officer's declaration that he himself  "manually reviewed each piece of paper" in Box 14 and "determined that none of the papers in the box consisted of public comments," Gilmore Decl. ¶ 31; *see also* Suppl. Gilmore Decl. ¶ 3, demonstrates the adequacy of the agencies' search within Box 14. *See, e.g.*, *Aguiar*, 865 F.3d at 739 (noting that, if "files consist[] of physical documents," a search in which "each" document is "examined manually" is adequate); *Tushnet v. U.S. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 429 (D.D.C. 2017) (finding adequate a declaration stating that an official "manually reviewed paper files for any relevant document").

The declarations do not, however, provide sufficient detail about the supplemental searches beyond Box 14 undertaken by RDG, CMFFS, CMMDPG, and CMCS to carry the agencies' burden at summary judgment.  As to RDG, beyond its searches of the RRM database, the declarations of CMS's FOIA Officer provide only that "DRIS contacted RDG . . . to ensure no other records remained in RDG about this rulemaking."  Gilmore Decl. ¶ 24.  This statement implies that RDG carried out some type of search of its own files, but the declarations do not confirm that search took place, let alone offer any description of what it entailed or uncovered. Likewise, the FOIA Officer declares that the FOIA Group "requested" CMFFS, CMMDPG, and CMCS to search, Suppl. Gilmore Decl. ¶ 7, that he "sent a search request and copy of the FOIA request" to each of these offices, *id.* ¶ 8, and that none of the three offices located the thirty-six comments, *id.* ¶ 9.  These vague assertions are insufficient to carry the agency's burden at summary judgment.  They do not detail the search instructions given to CMFFS, CMMDPG, or CMCS, outline the search methodology used by the offices, identify the individuals within these components who carried out the searches, indicate the search terms applied, or explain how the offices searched within any potentially responsive files.

As a result of these insufficiencies, defendants' declarations do not "'set[] forth the search terms and the type of search performed'" for the thirty-six comments "with the specificity [this Circuit's] precedent requires," *Reps. Comm.*, 877 F.3d at 403 (first alteration in original) (quoting *Oglesby*, 920 F.2d at 68), and the Court therefore "lacks any basis for 'determin[ing] if the search was [sufficiently] adequate in order to grant summary judgment,'" *id.* at 405 (alterations in original) (quoting *Oglesby*, 920 F.2d at 68).  On remand, the agencies must supplement their declarations to describe in detail the nature of the searches carried out by RDG, CMFFS, CMMDPG, and CMCS, including an explanation of the search methodology used by these components and any relevant search terms.

### B.     Defendants' Obligation to Provide Drafts of the Proposed Rule

Plaintiff further asserts, that even if defendants are not obligated to dig further for the missing comments, "the agencies should produce [the] draft rules" found in Box 14 because those records may be responsive to the FOIA Request.  Pl.'s Opp'n at 14; *see also id.* at 14–15; Pl.'s Reply at 8–9.  As support, plaintiff contends that the language used by the FOIA Request, seeking "access to the comments that were submitted on the Proposed Rule," FOIA Request at 3, "encompasses not only comment letters themselves, but also agency documents like draft rules, redlines, and internal comments that contain or incorporate the content of those comment letters," Pl.'s Opp'n at 15; *see also* Pl.'s Reply at 9.  The agencies counter that their obligation to produce records is "limited to those documents requested in [plaintiff's] FOIA [R]equest." Defs.' Reply at 9.  The Request sought only "access to the comments," not to drafts of the Proposed Rule, and specifically asked that that the agencies provide "copies of all 36 comments."  FOIA Request at 3.  In defendants' view, drafts of the Proposed Rule are therefore "non-responsive" to the FOIA Request.  Defs.' Reply at 9; *see also id.* at 9–10.  Defendants have the better of the argument.

An agency's obligation under FOIA to search for and produce responsive records is triggered when the records sought are "reasonably describe[d]."  5 U.S.C. § 552(a)(3)(A).  In accord with this textual emphasis on reasonableness, an agency determining the scope of a FOIA request and the concomitant scope of its obligation to search for and produce potentially responsive records "'has a duty to construe a FOIA request liberally,'" *Inst. for Justice v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (quoting *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), and to "read FOIA requests 'as drafted,'" *Machado Amadis*, 971 F.3d at 370 (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)); *see also People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014).  At the same time, "agencies are not obligated to search 'beyond the four corners of the request,'" as defined by the requester's description of the records sought, "'nor are they required to divine a requester's intent.'"  *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 160 (D.D.C. 2018) (quoting *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013)).  Moreover, the agency's duty to construe a FOIA request "liberally" does not obviate the requester's statutory burden to "'reasonably describe[]' the records sought."  *Inst. for Justice*, 941 F.3d at 572 (quoting 5 U.S.C. § 552(a)(3)(A)); *see also Am. Oversight v. U.S. Dep't of Justice*, 401 F. Supp. 3d 16, 34 (D.D.C. 2019) ("An agency must liberally construe a FOIA request, but it is not obligated to rewrite the request to ask for more than the requester did." (internal quotation marks and citations omitted)).

Here, by requesting "access to" and "copies of" the thirty-six comments made on the Proposed Rule, FOIA Request at 3, the FOIA Request specifically sought only the comments themselves.  The plain language of the FOIA Request thus unambiguously states that this discrete set of thirty-six comments are the only responsive records.  Plaintiff's attempts to

broaden the scope of its Request during its conferral process with defendants, *see* Nov. 19 Email at 4, and now in this litigation, *see* Pl.'s Opp'n at 14–15; Pl.'s Reply at 8–9, to include any agency document that refers to, characterizes, or incorporates the comments in any way cannot overcome the clear and cabined text of its Request. *See, e.g.*, *Ecological Rights Found. v. EPA*, Civ. A. No. 19-980 (BAH), 2021 WL 535725, at *9 (D.D.C. Feb. 13, 2021) ("Plaintiff's later representations concerning . . . records [found to fall outside the scope of its FOIA request] do not alter the limits imposed by the plain text of its Request."); *Coss v. U.S. Dep't of Justice*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015) ("Although FOIA requires an agency to produce all records 'reasonably described,' a FOIA plaintiff may not expand the scope of his request once his original request is made.").

Moreover, plaintiff's proffered construction of the FOIA Request to include any "agency documents . . . that contain or incorporate the content of those comment letters," Pl.'s Opp'n at 15, still would not encompass the records located in Box 14.  The FOIA Request focuses on comments submitted in response to the Proposed Rule, which would necessarily postdate the issuance of the Proposed Rule, while drafts of the Proposed Rule would, by definition, predate it. Though drafts of the Final Rule might include some description of or reference to the contents of the comments, drafts of the Proposed Rule could not possibly do so with respect to comments that did not yet exist.  Defendants' FOIA Officer declares that Box 14 contains only "draft copies of the [P]roposed [R]ule," not drafts of the Final Rule.  Gilmore Decl. ¶ 31.  These documents would not be responsive to the FOIA Request even under plaintiff's preferred, broader interpretation.

In short, the contents of Box 14 are squarely outside the scope of the FOIA Request and defendants therefore are not required to produce them to plaintiff.  *See, e.g.*, *Evans v. Fed.*

*Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only

obligated to release nonexempt records if it receives a request that 'reasonably describes such

records,'" that is, if the nonexempt records fall within the scope of the request. (quoting 5 U.S.C.

§ 552(a)(3)(A))).   Instead of seeking to improperly expand the plain language of its FOIA

Request, plaintiff had the option of submitting a new FOIA request for these records, and

remains free to do so.  *See, e.g.*, *Ecological Rights Found.*, 2021 WL 535725, at \*10 (declining

to adopt "a somewhat strained" but broader reading of the text of a FOIA request in part because

the "plaintiff could have submitted a FOIA request explicitly seeking" additional records);

*Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 70 (D.D.C. 2017) (noting that plaintiff could

"submit another FOIA request" to receive documents found to be outside the scope of the FOIA

request at issue in the case).[8]

## IV.    CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment, ECF No. 14, and

plaintiff's Cross-Motion for Summary Judgment, ECF No. 17, are both denied without prejudice.

Genuine issues exist as to the adequacy of defendants' search of their RDG, CMFFS,

CMMDPG, and CMCS components for responsive records.  On remand, the agencies must

supplement their declarations to explain these searches in greater detail.  Drafts of the Proposed

---

[8]       Even the FOIA Request did encompass drafts of the Proposed Rule, plaintiff would not necessarily be
entitled to receive these records.  FOIA's Exemption 5 protects from disclosure "inter-agency or intra-agency
memorandums or letters that would not be available by law to a party other than an agency in litigation with the
agency," 5 U.S.C. § 552(b)(5), including documents that would be exempt from disclosure under the deliberative
process privilege, *see Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017).  This privilege
"shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising
part of a process by which governmental decisions and policies are formulated,'" including drafts, with the
exception of "documents that embody a final decision" and therefore lose their predecisional and deliberative
character.  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, No. 19-547, 2021 WL 816352, at \*4 (Sup. Ct. Mar. 4,
2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).  Many, if not all, of the drafts of the
Proposed Rule would therefore likely be exempt from disclosure.

Rule located by defendants and now sought by plaintiff fall outside the scope of the FOIA Request, and therefore need not be produced by the agencies.

In light of the extremely narrow and singular dispute remaining between the parties, defendants are directed to supplement their declarations promptly by April 16, 2021, and the parties are further directed to submit, by that same date, a joint status report as to the progress, if any, the parties have made to narrow the remaining disputed issues and to propose a schedule to govern further proceedings in this matter.

An order consistent with this Memorandum Opinion will be entered contemporaneously.


Date:  March 16, 2021

                                        _____
                                        BERYL A. HOWELL
                                        Chief Judge